Filed 11/3/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| THE PEOPLE, | B299065 |
|---|---|
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA068856) |
| v. | |
| DANIEL ISIDRO NUNEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Hector M. Guzman, Judge. Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This appeal from the summary denial of a petition for resentencing under Penal Code[1] section 1170.95 presents the following issues: (1) What initial prima facie showing must be made under section 1170.95, subdivision (c) in order for a petitioner to be entitled to appointment of counsel and further consideration of the petition? (2) May the superior court rely solely on the jury's felony-murder special circumstance finding (in this case, kidnapping to commit murder) to summarily deny the petition for failure to make a prima facie showing that the petitioner falls within the provisions of section 1170.95? (3) May a defendant challenge a first degree murder conviction by attacking the validity of the jury's felony-murder special circumstance finding under the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) in a petition for relief under section 1170.95?

Resolving the first issue, we hold that, in order to make the initial prima facie showing under subdivision (c) of section 1170.95 that the petitioner falls within the provisions of the statute, the petition must include the factual basis for the legal conclusion that "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189."

We resolve the remaining issues in accord with the decisions of our colleagues in Division One of this district in *People v. Allison* (2020) 55 Cal.App.5th 449 (*Allison*), *People v. Murillo* (2020) 54 Cal.App.5th 160, 167 (*Murillo*), and *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1140–1141, review granted October 14, 2020, S264284 (*Galvan*), as well as the decision in

---

[1] Undesignated statutory references are to the Penal Code.

*People v. Gomez* (2020) 52 Cal.App.5th 1, 16–17, review granted October 14, 2020, S264033 (*Gomez*), in holding that the superior court may summarily deny a section 1170.95 petition at the initial prima facie review on the ground that a defendant convicted of murder with a felony-murder special circumstance finding (§ 190.2, subd. (a)(17)) is not, as a matter of law, eligible for resentencing under section 1170.95. We also agree with the holdings in those decisions that a section 1170.95 petition is not a vehicle for challenging, under our Supreme Court's decisions in *Banks*, *supra*, 61 Cal.4th 788, and *Clark*, *supra*, 63 Cal.4th 522, a murder conviction by attacking the jury's prior factual finding that the defendant was a major participant who acted with reckless indifference to human life. (See *Allison*, *supra*, 55 Cal.App.5th at pp. 458, 461; *Gomez*, at pp. 16–17, rev.gr.; *Galvan*, at p. 1142, rev.gr.; *Murillo*, at p. 168.)

## FACTUAL BACKGROUND[2]

On January 31, 2007, between 5:00 and 6:00 a.m., a witness in Rancho Palos Verdes heard two gunshots coming from the area of the nearby archery range and turnout area, and called the police. Around 7:15 a.m. the same day, another witness reported he had seen a dead body on the side of the road in the same location. Police arrived to find the body of Jesus Payan lying facedown in the dirt beneath a heavy chain gate. His wrists were bound behind his back with clear packing tape, and his ankles were bound with silver duct tape and clear packing tape. A small flashlight was tucked between his ankles. There were

---

[2] The factual background summarizes the statement of facts in the prior opinion in the direct appeal in this case. (*People v. Nunez* (Sept. 1, 2011, B222962) [nonpub. opn.] (*Nunez I*).)

3

two gunshot wounds to his head—both shots had entered the back of the head and exited the front. The evidence showed that Payan was killed "execution style," with the shots fired in rapid succession. Other fresh injuries and abrasions on Payan's body appeared to have been sustained in the 12 to 24 hours before he was killed.

The ground was damp from rain the night before, and investigators were able to make casts of the tire and shoe prints found near Payan's body. Casts of the tire impressions matched the tires of the Ford Expedition owned by appellant's girlfriend, Renee Casteneda. Casts of the shoe prints matched a pair of size 11 Nike Air Jordan athletic shoes found inside the trunk of a Toyota Camry owned by appellant's mother, which appellant often drove. Appellant wore a size 11 shoe. No shoe prints from the shoes Payan was wearing were found in the area.

A shell casing found near Payan's body matched shell casings that had been recovered from a shooting on January 19, 2007. In that incident, codefendant Rudy Tafoya had fired multiple shots into another vehicle from the passenger seat of the Camry; the shell casings found near Payan's body were determined to have been fired from the same weapon.

Two days earlier on January 29, 2007, Payan had told his former girlfriend that he would be going to Gardena to help appellant move the following day. On January 30, 2007, Payan's neighbor saw Payan exit the front passenger door of a light blue Ford Expedition. He asked her for some cigarettes and told her he was going to Gardena to help friends move. He returned to the Expedition, in which there were three other occupants, and left.

4

Sometime on January 30, 2007, Regina Reyes, a friend of Payan's, called appellant asking for methamphetamine. Appellant told her he was in Gardena moving out of his house. Reyes went to appellant's house around 10:50 p.m. hoping to get some drugs. When she arrived, appellant and Tafoya were there, and the house was mostly empty. Reyes stayed, and around midnight Payan and another man arrived with beer. All five of them sat in the living room talking. Before Reyes left appellant's house between midnight and 2:00 a.m., Payan and the man with whom he had arrived departed, saying they would return.

On January 31, 2007, at 12:22 a.m., Payan left a message on his former girlfriend's cell phone, asking her to lock his van and stating that he was in Gardena with appellant.

Sometime on the night of January 30, 2007, Mayra Moran and Christine S. went to someone's house. Appellant was there with a "dark, bald and skinny guy" who matched Tafoya's thin build. Moran was intoxicated; she recalled passing out more than once, but did not remember seeing Payan that night. In an interview with detectives, Moran indicated that at some point a man was put into the cargo compartment of an SUV. Appellant ordered Moran and Christine S. to get in the SUV and wait. Moran did not see the man in the cargo area, but she heard him moaning and groaning. Appellant and his companion entered the vehicle and appellant started driving.

With loud music playing, the SUV eventually came to a stop at a dirt road turnout. Appellant and his associate exited the SUV and took the man out of the back of the vehicle. Moran then heard two gunshots. The two men returned to the SUV without saying anything. Moran woke up in her own bed, but did not remember how she got home.

Detectives searched the Camry and Castaneda's Ford Expedition in February 2007. In addition to the athletic shoes recovered from the Camry's trunk, detectives found two blood-stained shirts and DMV paperwork with appellant's name in the Camry. In the cargo compartment of the Ford Expedition, detectives found a black plastic bag with a small fragment of duct tape stuck to it. Tests of the duct tape fragment revealed DNA that came from a mixture of at least two people, including Payan. A comparison of the tape fragment with the duct tape found on Payan's ankles revealed no differences in physical, optical, and chemical properties. In the Ford Expedition detectives also found a folding knife, paperwork belonging to appellant and Castaneda, and a photo album with pictures of appellant and one picture of Tafoya.

## PROCEDURAL BACKGROUND

Appellant was charged and convicted in 2009 of the 2007 first degree murder and kidnapping of Payan. (§§ 187, subd. (a), 207, subd. (a).) The jury also found true the special circumstance that the murder was committed while appellant was engaged in a kidnapping (§ 190.2, subd. (a)(17)) and the special allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)). Appellant received a state prison sentence of life without the possibility of parole for the murder conviction and 22 years for the kidnapping conviction. He appealed his conviction, and on September 1, 2011, we affirmed the judgment, but remanded the matter to the trial court to stay the 22-year kidnapping sentence pursuant to section 654. (*Nunez I, supra,* B222962.)

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) in order to "amend the felony murder rule and the natural and probable consequences doctrine,

6

as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, Senate Bill No. 1437 added section 1170.95, creating a procedure whereby a person whose murder conviction is final, but who could not now be convicted based on Senate Bill No. 1437's amendments to sections 188 and 189, can petition to have the murder conviction vacated and to be resentenced. (Stats. 2018, ch. 1015, § 4.)

On February 15, 2019, appellant filed a petition for resentencing under section 1170.95. The superior court summarily denied the petition without appointing counsel, and this appeal followed.

On the form declaration in support of the section 1170.95 petition,[3] appellant checked boxes 1, 2a, and 3, averring that he was eligible for relief because (1) an information was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine (box 1); (2) he was convicted of first or second degree murder following trial (box 2a); and (3) he could not now be convicted of murder under recent amendments to sections 188 and 189 (box 3). Appellant also checked box 4, requesting the appointment of counsel during the resentencing process.

Appellant did not check any of the boxes on the form that set forth the various factual grounds for the legal conclusion that

---

[3] The petition and accompanying declaration are on a form available from www.restorecal.org, a prisoner's advocacy group.

7

the petitioner could not now be convicted of first or second degree murder because of the changes made to sections 188 and 189.

The superior court noted that appellant had not made any factual allegations to support the claim he could not now be convicted under section 189. The court further observed that although the jury was instructed on the natural and probable consequences theory of murder, the prosecutor never relied on that theory. Instead, the jury was instructed on special circumstance felony murder (murder in the commission of kidnapping) and found the allegation to be true.

Reviewing the instructions given, the court stated that "[p]ursuant to CALCRIM 703, the jury was instructed that in order to find this special circumstance true, for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, they must find, beyond a reasonable doubt, that the defendant either intended to kill, or that 'the defendant acted with reckless indifference to human life and was a major participant in the crime.' (CALCRIM 703)" Because the jury had found the felony-murder special-circumstance allegation true, the superior court summarily denied the petition on the ground that appellant is not entitled to relief under section 1170.95 as a matter of law.

## DISCUSSION

### I. In Order to Make the Initial Prima Facie Showing Under Section 1170.95, Subdivision (c), the Petition Must Include the Factual Basis for the Assertion that the Petitioner Could Not Now Be Convicted Because of Changes to Section 188 or 189

Section 1170.95, subdivision (c) prescribes a sequential procedure for the superior court's consideration of a petition for resentencing under the statute.[4] (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, S260493 (*Verdugo*); see *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [sequential structure of a statutory scheme supports interpretation that acts required by the statutes occur in the same sequence].)

---

[4] "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

In interpreting section 1170.95, we must give meaning to all parts of the statute to the extent possible. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.; *People v. Shabazz* (2006) 38 Cal.4th 55, 67 [" 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible' "].) "[T]he language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] To that end, we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 332.)

It is clear from the language of section 1170.95, subdivision (c) that upon receipt of a petition containing all of the information required under section 1170.95, subdivisions (a) and (b), the superior court undertakes a two-step review before an order to show cause may issue. (*People v. Offley* (2020) 48 Cal.App.5th 588, 596; *Verdugo*, *supra*, 44 Cal.App.5th at p. 328, rev.gr.) The first review is "made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, at p. 328, rev.gr.)

The superior court's role in conducting the initial prima facie review under section 1170.95, subdivision (c) is "to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.) The court's review at this stage "must be something more than simply determining whether the petition is facially sufficient; otherwise given subdivision (b)(2), this portion of subdivision (c) would be surplusage." (*Id.* at pp. 328–329.) In conducting its preliminary review for statutory eligibility, the superior court thus looks first to the averments of the petition itself—has the petitioner presented a prima facie showing for relief? (See *Lewis*, *supra*, 43 Cal.App.5th at p. 1137, rev.gr.)

" '[P]*rima facie* evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. It may, however, be contradicted, and other evidence is always admissible for that purpose.' (*Vaca Valley etc. R. R.* v. *Mansfield* (1890) 84 Cal. 560, 566.) 'The words "prima facie" mean literally, "at first view," and a prima facie case is one which is received or continues until the contrary is shown and can be overthrown only by rebutting evidence adduced on the other side.' " (*In re Raymond G.* (1991) 230 Cal.App.3d 964, 972; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 ["A prima facie showing is one that is sufficient to support the position of the party in question"].)

The averments in boxes 5, 6, and 7 of the form petition appellant filed provide the support for the legal conclusion in box 3 that petitioner "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code [sections] 188 and 189" by stating the factual grounds for eligibility under

11

the statute. Thus, if a defendant was convicted of first degree felony murder, the petition must allege under penalty of perjury all of the reasons set forth in box 5 that he or she could not now be convicted due to the changes in section 189 brought about by Senate Bill No. 1437. Similarly, a defendant convicted of second degree murder under the natural and probable consequences doctrine must allege under penalty of perjury—by checking box 6—that changes to section 188 preclude a conviction for murder. And finally, if the defendant's eligibility for resentencing under section 1170.95, subdivision (d)(2) is due to a court or jury's prior determination that he or she was not a major participant and/or did not act with reckless indifference to human life under section 190.2, subdivision (d), the petition would have to make that allegation under penalty of perjury by checking box 7.

Here, appellant did not check boxes 5, 6, or 7 in his petition for resentencing under section 1170.95, nor did he otherwise provide any factual support for the legal conclusion stated in box 3. Without any of these factual allegations, however, a petitioner cannot carry the burden of making a prima facie showing of eligibility for relief under the statute.

Confronted with such a petition—averring no facts whatsoever and presenting the court with neither declaration nor a single document suggesting petitioner's eligibility under the statute—the superior court may simply deny the petition for failure to make the requisite prima facie showing. Accordingly, because appellant failed to make the initial prima facie showing required in subdivision (c), the superior court could have denied the petition for resentencing on this basis alone.

Alternatively, the court may, as the superior court did here, examine readily ascertainable information in the record of

12

conviction and deny the petition if that threshold review "establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill [No.] 1437's amendments to sections 188 and 189." (*Verdugo, supra*, 44 Cal.App.5th at p. 330, rev.gr.; *People v. Lee* (2020) 49 Cal.App.5th 254, 262, review granted July 15, 2020, S262459; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673–674, review granted July 8, 2020, S262481; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898, review granted Aug. 12, 2020, S263219; *Lewis, supra*, 43 Cal.App.5th at pp. 1137–1140, rev.gr.; see *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58, review granted Mar. 18, 2020, S260410.)[5]

---

[5] The issue of whether a superior court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is currently under review by the California Supreme Court. (<https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2311967&doc_no=S260598&request_token=NiIwLSEmXkw5W1BBSCMtSEJJUEw0UDxTJSJeUzNRMCAgCg%3D%3D> [as of July 7, 2020], archived at <https://perma.cc/RV72-6SDZ>.) Pending further guidance from our Supreme Court, we agree with these courts' conclusions that section 1170.95, subdivision (c) permits the superior court to review the record of conviction as well as the averments of the petition, and to summarily deny the petition without the appointment of counsel where this initial review reveals that the petitioner is ineligible for relief as a matter of law.

## II. The Superior Court May Summarily Deny a Section 1170.95 Petition at the Initial Prima Facie Review on the Ground that a Petitioner Convicted of Murder with a Felony-murder Special Circumstance Finding Is Not, as a Matter of Law, Eligible for Resentencing Under Section 1170.95

In order to obtain relief from his felony-murder conviction under section 1170.95, a petitioner must make a prima facie showing that he "*could not* be convicted of first or second degree murder *because of* changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a)(3), italics added; *Allison, supra*, 55 Cal.App.5th at p. 457.) Because of the jury's felony-murder special circumstance finding in his case, appellant cannot, as a matter of law, make the requisite prima facie showing.

**A. *The jury's finding that appellant either intended to kill or was a major participant in the kidnapping who acted with reckless indifference to human life establishes as a matter of law that he could still be convicted of first or second degree murder***

As amended, section 189, subdivision (e) provides that a defendant who participated in one of the enumerated felonies in subdivision (a) (including kidnapping) in which a death occurs may be convicted of murder *only* if one of the following is proven beyond a reasonable doubt:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced,

14

solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.[6]" (§ 189, subd. (e); *Allison*, *supra*, 55 Cal.App.5th at p. 457; *Gomez*, *supra*, 52 Cal.App.5th at p. 14, rev.gr.)

The elements listed in section 189, subdivision (e) are identical to the requirements for a felony-murder special circumstance finding today and in 2009 when appellant was convicted. Appellant's jury was instructed that in order to prove the felony-murder "special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove either that the defendant intended to kill, or the People must prove *all* of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless

---

**6** Subdivision (d) of section 190.2 provides, "[E]very person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

indifference to human life." (CALCRIM No. 703 (rev. 2008 ed.) italics added.) The jury was further instructed, "If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstance of Kidnapping for the purpose of Murder to be true. If the People have not met this burden, you must find this special circumstance has not been proved true for that defendant." (CALCRIM No. 703, *supra*.)

By finding the kidnapping special circumstance true beyond a reasonable doubt, the jury necessarily made the factual finding that appellant participated in the kidnapping with the intent to kill Payan, *or* that appellant was a major participant in the kidnapping who acted with reckless indifference to Payan's life. Either of these findings would allow appellant to be convicted of first degree murder notwithstanding Senate Bill No. 1437's changes to sections 188 and 189. Because the jury's special circumstance finding shows as a matter of law that appellant could still be convicted of felony murder under section 189 as amended, the superior court correctly concluded that he cannot make a prima facie showing of eligibility for resentencing.

**B. *The* Banks *and* Clark *decisions provide no basis for challenging the jury's factual finding that appellant either intended to kill or was a major participant in the kidnapping who acted with reckless indifference to human life in the context of a petition for resentencing under section 1170.95***

Appellant seeks to evade the preclusive effect of the special circumstance finding to his section 1170.95 petition by

16

challenging the validity of the jury's factual finding under our Supreme Court's decisions in *Banks* and *Clark*. He argues that by establishing "new criteria" for the determination of major participation and reckless indifference (MPRI), the California Supreme Court effectively invalidated the jury's prior factual findings, and in the context of a petition for resentencing under section 1170.95, he is entitled to challenge the sufficiency of the evidence in support of the jury's findings that he was a major participant in the kidnapping and acted with reckless indifference to human life. We disagree.

In *Banks*, following an examination of existing United States Supreme Court jurisprudence, the court explained that in order to qualify as a major participant in the underlying felony, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks*, *supra*, 61 Cal.4th at p. 802.) To help resolve that question, *Banks* set out a series of considerations relevant to determining whether a defendant was a major participant in the underlying felony. (*Id*. at p. 803.) The court did the same in *Clark*, identifying factors that may be useful in determining whether a defendant acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 618–622.)

*Banks* and *Clark* did not state a new rule of law. Rather, the high court in those cases "merely clarified the 'major participant' and 'reckless indifference to human life' principles that existed when defendant's conviction became final." (*In re Miller* (2017) 14 Cal.App.5th 960, 978; *Allison*, *supra*, 55 Cal.App.5th at p. 458.)

Further, our Supreme Court has not required that juries be instructed on the clarifications, and in the wake of *Banks* and

17

*Clark*, no mandatory language or material changes were made to the CALCRIM special circumstance instructions. (*Allison*, *supra*, 55 Cal.App.5th at p. 458; see CALCRIM No. 703 (2020 ed.); *Gomez*, *supra*, 52 Cal.5th at p. 14, fn. 6, rev.gr. [CALCRIM No. 703 before *Banks* and *Clark*].) Rather, while CALCRIM No. 703 now includes *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, "[t]he bench notes to the instruction state that *Banks* 'stopped short of holding that the court has a sua sponte duty to instruct on those factors,' and *Clark* 'did not hold that the court has a sua sponte duty to instruct on those factors.' " (*Allison*, at pp. 458–459]; Bench Notes to CALCRIM No. 703 (2020 ed.) p. 452; *People v. Price* (2017) 8 Cal.App.5th 409, 450–451 [jury instructions that omit the *Banks* and *Clark* factors are not defective].)

In short, the felony-murder special-circumstance instructions given *post-Banks* and *Clark* do not necessarily differ at all from pre-*Banks* and *Clark* felony-murder special-circumstance instructions—the factors, issues, and questions the *post-* and pre-*Banks* and *Clark* juries consider to make the MPRI finding are exactly the same.[7] Accordingly, whether a jury made

[7] The only necessary difference between a pre-*Banks* and *Clark* felony-murder special circumstance finding and one returned after *Banks* and *Clark* arises at the level of appellate review: If the finding was challenged on direct appeal before *Banks* and *Clark*, appellate review of the sufficiency of the evidence to support the finding was not informed by *Banks* and *Clark*. Moreover, prior to *Banks* and *Clark*, a defendant might not have even challenged the sufficiency of the evidence because then-existing case law did not support such a challenge, whereas the same defendant could have a colorable appellate argument in light of *Banks* and *Clark*.

a *post-* or pre-*Banks* and *Clark* MPRI finding, that finding establishes as a matter of law the defendant's ineligibility for relief under section 1170.95 because he was found either to have participated in the specified felony with the intent to kill, *or* he was a major participant who acted with reckless indifference to human life and could still be convicted of murder notwithstanding the changes to section 189.

In this regard, we disagree with the decisions in *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted July 7, 2020, S262011 (*Torres*), *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835 (*Smith*), and *People v. York* (2020) 54 Cal.App.5th 250 (*York*) because all three of these cases misinterpret the scope and effect of *Banks* and *Clark*.

*Torres* concluded the superior court erred in denying an 1170.95 petition based on its treatment of pre-*Banks* and *Clark* MPRI findings "as if they resolved key disputed facts." (*Torres*, *supra*, 46 Cal.App.5th at p. 1180, rev.gr.) *Smith* echoed *Torres* in holding that a section 1170.95 petition may not be denied on the basis of a pre-*Banks* and *Clark* MPRI finding because "the factual issues that the jury was asked to resolve in 1994 are not the same factual issues our Supreme Court has since identified as controlling [and] [i]t would be inappropriate to 'treat[] [the 1994] findings as if they resolved key disputed facts' when the jury did not have the same questions before them." (*Smith*, *supra*, 49 Cal.App.5th at p. 93, rev.gr.) *York* went even further, declaring with respect to pre-*Banks* and *Clark* MPRI findings that no jury has "determined whether the defendant was a 'major participant' who acted with 'reckless indifference' under correctly articulated standards," and the Legislature has not "expressed an intent to differentiate between defendants with a pre-*Banks* and *Clark*

19

special circumstance finding, and, for instance, defendants who were not charged with a special circumstance." (*York, supra*, 54 Cal.App.5th at p. 258.) Thus, according to *York*, for purposes of section 1170.95, a defendant with a pre-*Banks* and *Clark* MPRI jury finding should be treated as if that finding simply did not exist.

As discussed above, however, there is no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a *post-Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards. The mandatory instructions did not change, and the pre-*Banks* and *Clark* jury necessarily resolved the same factual issues beyond a reasonable doubt that a *post-Banks* and *Clark* jury would necessarily resolve beyond a reasonable doubt.

Of course, jury findings in a final judgment are generally considered to be valid and binding unless and until they are overturned by collateral attack, regardless of whether they were subjected to appellate review. Nothing in *Banks* or *Clark* supports the automatic invalidation or disregard of such findings by a properly instructed jury.

**C. *Appellant's claim that he could not now be convicted of murder is based on his substantial evidence challenge under* Banks *and* Clark*, not on any changes to sections 188 or 189 brought about by Senate Bill No. 1437. He is therefore ineligible for relief under section 1170.95.***

At the heart of appellant's appeal is the contention that he is eligible for resentencing under section 1170.95 because the evidence is insufficient to support his conviction under *Banks* and *Clark*. However, the fact that he does not and cannot claim

20

entitlement to relief because of Senate Bill No. 1437's changes to sections 188 or 189 is fatal to any claim for relief under section 1170.95.

As Division One of this district explained in rejecting the same argument appellant advances here: "We analyze the issue by turning to the language of section 1170.95 itself: In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437. (§ 1170.95, subd. (a)(3).) [¶] In this case, that requirement is not met. Although [appellant] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev.gr.; accord, *Gomez*, *supra*, 52 Cal.App.5th at p. 17, rev.gr.)

The Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. But there is no indication in the statute's text or history of any legislative intent to permit defendants to challenge their murder convictions by attacking prior findings of fact. Indeed, as the court in *Allison* observed, "subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a*

21

*prior fact finder got the facts wrong.*" (*Allison, supra,* 55 Cal.App.5th at p. 461.)

In this regard, we agree with *Allison*'s conclusion that *Verdugo, supra,* 44 Cal.App.5th 320, "correctly describes the role of prior factual findings in the analysis of a petition under section 1170.95. According to *Verdugo,* relief under section 1170.95 is barred if a prior finding shows the petitioner 'was convicted on a ground that remains valid notwithstanding Senate Bill No. 1437's amendments to sections 188 and 189.' (*Verdugo, supra,* 44 Cal.App.5th at p. 330[, rev.gr.].) *Verdugo*'s interpretation is faithful to the language of subdivision (a)(3) of section 1170.95: If the prior finding shows the petitioner meets the requirements for murder liability under amended sections 188 and 189, then it is not true that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189,* and the petition must be denied." (*Allison, supra,* 55 Cal.App.5th at pp. 461–462.)

### III. A Section 1170.95 Petition Is Not a Proper Vehicle for Mounting a Challenge Under *Banks* and *Clark* to the Jury's Prior Factual Finding that the Petitioner Was a Major Participant Who Acted with Reckless Indifference to Human Life

Nothing in Senate Bill No. 1437 suggests the Legislature intended to provide redress for allegedly erroneous prior fact-findings or give defendants with pre-*Banks* and *Clark* special circumstances findings an opportunity to retry their cases by challenging their convictions under section 1170.95. Rather, courts have allowed defendants to challenge the sufficiency of the evidence supporting pre-*Banks* and *Clark* special circumstances

findings by way of habeas corpus, thus "making an exception to the rule that ordinarily bars a defendant from challenging the sufficiency of the evidence in a habeas petition." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1141, rev.gr.; see, e.g., *In re Scoggins* (2020) 9 Cal.5th 667, 673 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"]; *People v. Ramirez* (2019) 41 Cal.App.5th 923, 926–927 [granting petition under § 1170.95 after special circumstance findings had been struck as a result of defendant's habeas petition].)

As discussed above, Senate Bill No. 1437 did not change any of the requirements for the special circumstance finding announced in *Banks* and *Clark*. "Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *Murillo*, *supra*, 54 Cal.App.5th at p. 168, rev.gr.)

In this regard, the courts' reasoning in *Gomez*, *Galvan*, and *Murillo* is particularly persuasive. In rejecting the defendant's bid to challenge the evidentiary support for the special circumstance findings under *Banks* and *Clark* in the context of a section 1170.95 petition, *Gomez* explained:

"In an evidentiary hearing on a section 1170.95 petition to determine whether there is sufficient evidence to support her murder conviction on a felony-murder or natural and probable

23

consequences theory, the People would bear the burden of proof beyond a reasonable doubt. (§ 1170.95, subd. (d)(3).) To make its true findings on the special circumstance allegations against [the defendant], the jury was required to find that [the defendant] either acted with the intent to kill, or that she was a major participant who acted with reckless indifference to human life in the robbery and kidnapping of [the victim]. The People should not be required to prove beyond a reasonable doubt, a second time, that [the defendant] satisfied those requirements for the special circumstance findings. Considering the different burdens of proof in a habeas corpus proceeding and a proceeding under section 1170.95, we conclude that a petition for writ of habeas corpus is the appropriate vehicle for [the defendant] to challenge her special circumstance findings. If [the defendant] were to succeed in challenging the special circumstance findings in a habeas corpus proceeding, she would then be in a position to successfully petition under section 1170.95 to vacate her murder conviction." (*Gomez, supra,* 52 Cal.App.5th at p. 17, rev.gr.)

*Galvan* also expressed concern over the disparate treatment of defendants based solely on the date of their conviction. Because the People would have the burden of proving the factual support for special circumstance findings beyond a reasonable doubt in a section 1170.95 proceeding, a defendant convicted before *Banks* and *Clark* who could challenge his special circumstance findings in a petition for resentencing would have an "enormous advantage" over a defendant convicted after *Banks* and *Clark*, who would have burden of establishing on direct appeal that the special circumstance findings were not supported by substantial evidence. (*Galvan, supra,* 52 Cal.App.5th at pp. 1142–1143, rev.gr.; *Murillo, supra,* 54 Cal.App.5th at pp. 168–

24

169, rev.gr.)  But "nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants."  (*Galvan*, at p. 1143.)

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


                                        LUI, P. J.

I concur:



        CHAVEZ, J.

*People v. Nunez*, B299065

ASHMANN-GERST, J., Concurring in the judgment.


I agree with the opinion of the court that the trial court properly denied defendant and appellant Daniel Isidro Nunez's petition for resentencing (Pen. Code, § 1170.95).[1]  I write separately because I would only reach one issue raised by the parties; that issue resolves this appeal and there is no need to discuss the remaining contentions raised by both defendant and the People on appeal.

As the trial court noted at the hearing on defendant's petition, the jury was instructed with CALCRIM No. 703. Specifically, the jury was told that in order to find the special circumstance true, the People had to prove either that defendant intended to kill or that defendant was a major participant in the crime and acted with reckless indifference to human life.  The jury then found the special circumstance of felony murder true.  Because the jury was instructed that in order to find the special circumstance true it had to find that defendant either intended to kill the victim or that he was a major participant in the

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

kidnapping who acted with reckless indifference to the victim's life and then found the special circumstance true, the jury necessarily found either intent or that defendant was a major participant who acted with reckless indifference to human life. (*People v. Felix* (2008) 160 Cal.App.4th 849, 865 [the appellate court presumes that the jury followed the instructions as given].)

Moreover, I conclude that that finding stands under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*People v. Law* (2020) 48 Cal.App.5th 811, 821–822 (*Law*), review granted July 8, 2020, S262490 [holding that whether there is sufficient evidence that a defendant was a major participant who acted with reckless indifference to human life is a question that we can decide on appeal].) As set forth in *People v. Nunez* (Sept. 1, 2011), B222962 [nonpub. opn.], the evidence of defendant's participation in the kidnapping and murder was overwhelming. "[T]his sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life." (*Law*, *supra*, at p. 825.) Under these circumstances, defendant is not entitled to resentencing relief.

In light of this conclusion, there is no need to decide whether the trial court could have denied defendant's petition for resentencing solely on the grounds that he did not offer any facts in support of his averment that he could not now be convicted of

2

first or second degree murder because of the changes made to sections 188 and 189.  I also see no need at this point to weigh in on whether defendant can use section 1170.95 to challenge his murder conviction by attacking a prior factual finding pursuant to *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 or if he must proceed by writ of habeas corpus.

As noted by the court's opinion, authority on this issue is split.  "Some courts say the legislature did not intend section 1170.95 to be used to challenge a murder conviction by attacking a prior factual finding." (*People v. Douglas* (B301302, Oct. 20, 2020) 2020 Cal.App.LEXIS 971, at p. *9 (*Douglas*), citing *People v. Gomez* (2020) 52 Cal.App.5th 1, 14–17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; and *People v. Murillo* (2020) 54 Cal.App.5th 160, 168–169.)  "Other opinions do not insist on the habeas procedure and permit review under section 1170.95." (*Douglas*, *supra*, at p. *10, citing *Law*, *supra*, 48 Cal.App.5th at pp. 821–822; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted July 7, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 94, review granted July 22, 2020, S262835; and *People v. York* (2020) 54 Cal.App.5th 250, 260–263; also compare *Law*, *supra*, at p. 825 with *People v. Jones* (E072961, Oct. 23, 2020) 2020 Cal.App.LEXIS 1003, at p. *2.)

3

Like my colleagues in *Douglas*, I do not think we need to "enter this controversy." (*Douglas*, *supra*, 2020 Cal.App.LEXIS at p. *10.) It will continue until there is guidance from our Supreme Court, and "[i]t does not matter in this case." (*Douglas*, *supra*, at p. *10.) Defendant did not demonstrate that he is entitled to be resentenced under section 1170.95.

_____, J.

ASHMANN-GERST

4